**James D. BOWMAN**

v.

**Gilbert D. ABRAMSON, Esquire and
Jeffrey M. Freedman, Esquire, et al.**

**Civ. A. No. 81–4701.**

United States District Court,
E. D. Pennsylvania.

July 27, 1982.

---

Mary B. Stein, Thomas B. Rutter, Ltd., Philadelphia, Pa., for plaintiff.

Frank A. Luchak, Duane, Morris & Hecksher, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

Defendants move to dismiss this legal malpractice action, asserting lack of a justiciable controversy. Plaintiff argues in response that unless he is permitted to maintain his suit here it may become barred by the statute of limitations. For the reasons set forth below, the defendants' motion to dismiss will be granted.

Plaintiff, James Bowman, alleges that his former attorneys, defendants Gilbert Abramson, Jeffrey Freedman, Allen Getson, and Lawrence Corson, were negligent

in their conduct of two medical malpractice lawsuits commenced in the Philadelphia Court of Common Pleas, *Bowman v. Mattei, et al.*, July Term, 1974, No. 1817 and *Bowman v. Nappi, et al.*, April Term, 1977, No. 987. The court granted the medical defendants' motions for summary judgment on January 21, 1981 because the suits were not filed before the statute of limitations expired. The plaintiff then selected new counsel, appealed the summary judgments, and on November 17, 1981, instituted this legal malpractice suit against his former attorneys. His causes of action are in tort and in contract. The tort claim is based on the defendants' alleged negligent failure to bring timely suit against the medical defendants and for the attorney defendants' failure to respond to New Matter which raised the statute of limitations as a defense. The plaintiff's contract claim alleges that the attorney defendants breached their contracts of professional employment.

The plaintiff has brought this suit because he believes the statute of limitations has started to run on his legal malpractice claim. He fears that unless he sues his former attorneys now he may be precluded from suing them in the future. Plaintiff's concern is based upon his belief that the discovery of his attorney's negligence started the running of the statute of limitations. This occurred, according to the plaintiff, when the underlying suits against the medical defendants were dismissed as time-barred on January 21, 1981. He fears that if he does not sue his attorneys within the two year statutory period ending January 21, 1983 his right to sue will lapse. This would mean that if plaintiff's appeals in the original cases fail after January 1983 he will be denied the possibility of any recovery for his injuries.

The defendants argue in their motion to dismiss that this legal malpractice action is premature because the underlying medical malpractice actions have not been fully adjudicated. Should the Superior Court reverse the trial court and allow the medical malpractice cases to proceed, the law suit here will become moot. Therefore the defendants contend that the plaintiff has not presented this court with a case or controversy as required by article III, section 2, clause 1 of the Constitution. I agree and will dismiss plaintiff's complaint.

There are two grounds for dismissal. One is based on federal jurisdictional power and the other is based on state substantive law, though only the first is necessary to dispose of the complaint. Each is founded on plaintiff's inability to demonstrate that he has been harmed in a way that the law will recognize. First, the plaintiff has not met the jurisdictional requirement of justiciability, which limits access to federal courts to cases that are ripe for adjudication.[1] Until the underlying medical malpractice cases are decided adversely to the plaintiff the case against his former attorneys is hypothetical and his damages are speculative. Second, the plaintiff has not satisfied the substantive requirements of Pennsylvania law for a legal malpractice action. The elements for legal malpractice are:

1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge;

3. That such negligence was the proximate cause of damage to the plaintiff.[2]

*Guy v. Liederbach*, 279 Pa.Super. 543, 421 A.2d 333, 336 (1980); *Duke & Company v. Anderson*, 275 Pa.Super. 65, 418 A.2d 613,

1. The Supreme Curt has defined a justiciable controversy as one that is ready for immediate determination, as "distinguished from a difference or a dispute of a hypothetical abstract character; from one that is academic or moot . . . It must be a real and substantial controversy admitting of a specific relief through a degree of a conclusive character, as distin-

guished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Company of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1936).

2. R. Mallen & V. Levit, *Legal Malpractice*, 123 (1977).

616 (1980); *Schenkel v. Manheit*, 266 Pa.Super. 396, 399, 405 A.2d, 493, 494 (1979). This is merely a restatement of the traditional elements of negligence: duty, breach, cause, and damages. Proof of damages is also an essential element for a legal malpractice action brought in contract. *Duke & Company v. Anderson*, 418 A.2d at 617. Plaintiff has failed to show that he has been damaged on either his tort or contract theory. Again, this is because his medical malpractice cases are still pending. Plaintiff has also not demonstrated a causal link in his tort claim between the defendants' nonfeasance and his injury. This of course he cannot do until he has been injured. There can be no case until there is a cause of action, and there can be no cause of action until there is an injury.

It has been suggested that this Court might chose to stay rather than to dismiss the present proceedings pending the outcome of the underlying cases. That would only be necessary if plaintiff's interpretation and application of the discovery rule to the statute of limitations was correct. However, the discovery rule, which starts the running of the statute of limitations when the plaintiff discovers his injury and its causal connection to the defendant, is not the normative rule for determining when the statute of limitations commences. It is rather a corollary to the occurrence rule, which triggers the running of the statute when the injury occurs, and is employed only to mitigate the occurrence rule's occasional harshness.[3]

I note that there is a conflict of authority regarding the appropriate rule in the early Pennsylvania legal malpractice cases. The early case of *Derrickson v. Cady*, 7 Pa. 27 (1847) seems to imply that the statute commences when the attorney's negligence is discovered by the client. "The Pennsylvania rule, I take it, would be for the statute to begin to run from the time the client had notice of the attorney's [nonfeasance]." *Derrickson*, 7 Pa. at 31. However, a subsequent line of cases follows the occurrence rule without overruling *Derrickson*.[4] According to these cases, a cause of action accrues when the attorney breaches his duty to his client and not when the lawyer's negligence is discovered by the client, even though the client neither knows nor has reason to know of his attorney's misfeasance or nonfeasance. "The cases have usually arisen on the statute of limitations, and it has been uniformly held that the right of action is complete so that the statute begins to run from the breach although the damage may not be known or may not in fact occur until afterwards." *Lawall v. Groman*, 180 Pa. 532, 541, 37 A. 98 (1897). "Where the declaration, as in this case, alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action, and the statute runs from the date of the former, not from the time the special damage is revealed or becomes definite." *Moore v. Juvenal*, 92 Pa. 484, 490 (1880). This means that potential damage, the breach of duty, and not actual damage, the resulting injury, triggers the statute of limitations. These cases thus eliminated damage as an element of legal malpractice, a decidedly curious result since damage has long been considered a necessary element of negligence. "Proof of negligence in the air, so to speak, will not do." F. Pollack, *Torts*, 455 (11th ed). This anomalous result was justified on the grounds that statutes of limitations were legislative creations written in terms of "injury" and "rights of

---

**3.** Judge Takiff of the Philadelphia Court of Common Pleas has developed a three-pronged standard for defining the level of knowledge a plaintiff must have before the statute of limitations starts to run: (1) knowledge of the *injury*; (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. *Volpe v. Johns-Manville*, 4 P.C.R. 290, 295 (Phila.C.P.1980). *See also O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 709 (1981); *Anthony v. Koppers, Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980), *rev'd on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).

**4.** *See Lawall v. Groman*, 180 Pa. 532, 37 A. 98 (1897); *Moore v. Juvenal*, 92 Pa. 484 (1880); *Rhine's Administrators v. Evans*, 66 Pa. 192 (1870); *Campbell's Administrator v. Boggs*, 48 Pa. 524 (1865); *Miller v. Wilson*, 24 Pa. 114 (1850).

action" rather than in terms of discovery, "so that a judicial construction *limiting* [a statute], to *notice* of a right of action would be sheer legislation." *Fleming v. Culbert*, 46 Pa. 498 (1864) (original emphasis).[5] Additionally, strict application of this version of the occurrence rule often led to unjust results. Frequently a trusting client was precluded from any recovery whatsoever because he discovered his attorney's negligence only after the statute had run on both the underlying claim and on any claim he may have had against the dilatory attorney.[6] If this interpretation were to be used in the present case, plaintiff's cause of action against the defendants would have arisen when the underlying medical malpractice suit was time-barred in July 1974 and not, as plaintiff argues, when the Court of Common Pleas so ruled in January 1981. This would mean that the two year statute of limitations, and therefore the plaintiff's right to sue, expired in July 1976.

In *Derrickson* and *Juvenal* I am confronted with old and conflicting authority and must therefore look to emerging trends in Pennsylvania law in order to "predict but not form" state law. *Kohr v. Raybestos-Manhattan*, 505 F.Supp. 159, 162 (E.D.Pa. 1981). To do this "relevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir. 1980). There has been a clear trend in this century to use the discovery rule to protect plaintiffs who are not themselves negligent in asserting claims but who would be barred from bringing suit because they could not have discovered the injury until

more than two years after it had occurred. The discovery rule has the effect of *delaying* the running of the statute from the occurrence of the injury or breach of duty until the plaintiff either discovers he has been harmed or until he discovers the defendant's causal relation to his injury. The first major use of the rule was in cases involving hidden subterranean injuries, *see Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959); *Lewey v. Fricke Coke Co.*, 166 Pa. 536, 31 A. 261 (1895); *Gotshall v. Langdon*, 16 Pa.Super. 158 (1901). *But see Noonan v. Pardee*, 200 Pa. 474, 50 A. 255 (1901). The rule has since been extended to medical malpractice cases, *see Ciabattoni v. Birdsboro Steel Foundry and Machine Company*, 386 Pa. 179, 125 A.2d 365 (1956); personal injury cases, *see O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (1981); *Bayless v. Philadelphia National League Club*, 579 F.2d 37 (1978); *Irrera v. Southeastern Pennsylvania Transportation Authority*, 231 Pa.Super. 508, 331 A.2d 705 (1974); asbestos cases, *see Grabowski v. Turner & Newall Ltd., et al.*, 516 F.Supp. 114 (E.D.Pa.1980), aff'd sub nom. *DaMato v. Turner & Newall Ltd.*, 651 F.2d 908 (3d Cir. 1981) (*per curiam*); *Volpe v. Johns-Manville Corp.*, 4 P.C.R. 290 (Phila.C.P.1980); breach of contract suits involving latent defects, *see A.J. Aberman v. Funk Building Corporation*, 420 A.2d 594, 278 Pa.Super. 385 (1980); and wrongful death actions, *see Gemignani v. Philadelphia Phillies National League, Club, Inc.*, 287 F.Supp. 465 (E.D.Pa.1967). *But see Anthony v. Koppers Co., Inc.*, 496 Pa. 119, 436 A.2d 181 (1981) (precluded the use of the discovery rule for determining when the statute of limitations begins in wrongful death actions).[7]

---

**5.** The Pennsylvania Supreme Court recently declared that statutes of limitation that are triggered by specific events, such as death, must be strictly construed, but said in dicta that ambiguous terms like "injury" and "cause of action" may be more expansively defined to include discovery. *See Anthony v. Koppers Co., Inc.*, 496 Pa. 119, 436 A.2d 181 (1981).

**6.** The application of the occurrence rule to other factual situations occasionally had the similar result of precluding suit by unsuspecting plaintiffs. *See e.g., Bernath v. Pardee*, 189 A.

342, 325 Pa. 43 (1937) (medical malpractice claim); *Noonan v. Pardee*, 200 Pa. 474, 50 A. 255 (1901) (property claim arising from damage caused by subsurface mining).

**7.** Judge Aldisert, speaking for the Third Circuit, has described the discovery rule as developed by Pennsylvania courts and applied by the federal courts as follows:

> Pennsylvania courts have recognized the potential harshness inherent in a rigid application of the statute and long ago carved out an

The increasing recognition of the discovery rule does not mean that it is the standard rule for determining when the statute of limitations begins to run. The rule is rather a limited one designed to solve the anomalies that are inevitably created by wooden applications of the occurrence rule. *See Koppers*, 436 A.2d at 185 (O'Brien, C. J., dissenting). It is "a judicial creation fashioned to solve a specific problem, namely, whether the law should preclude recovery for an injury that not even a diligent party may reasonably be expected to discover." *Anthony v. Koppers Co., Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980).[8] The discovery rule is therefore a corollary to the occurrence rule. It is not a separate, superceding rule.

Furthermore, the discovery rule is founded upon simple notions of equity and fairness. It is only used to toll the statute of limitations to prevent an injustice, never to start the statute to create one. Since the discovery rule is appropriately invoked only when the occurrence rule would lead to an unjust result, it logically follows that the discovery rule can only apply after an injury has occurred. It would indeed be unjust for the statute of limitations to begin to run when someone merely suspects an injury *may* occur. But the law of Pennsylvania, the older cases notwithstanding, is that the statute is triggered by real injuries, not potential ones.

It does not follow from my decision that the plaintiff is without a remedy; only that the remedy must await a wrong. Plaintiff is free to renew his claim should be unsuccessfully exhaust his appeals in the underlying cases. Only then will he have suffered an injury to which the law may grant redress.

---

exception: ignorance of an injury may delay the running of the statute of limitations. The judicially created "discovery rule" ... has been expanded to except the plaintiff who is aware of his injury but not its cause. Federal courts in this circuit have helped to refine the precept. Our district courts have noted that the rule delays the accrual of a cause of action from the time of a defendant's tortious conduct to a time when the injury and its cause become known or knowable, that it is a rule intended to benefit plaintiffs in that it avoids potential injustice caused where an injury is "inherently unknowable" at the time of a defendant's conduct, and that the legislatively declared desirability for repose and judicial administrative expediency will not be unduly affected by the small number of "inherently unknowable" injuries.
*O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 705–706 (1981) (citations omitted).

8. On appeal, the Supreme Court reversed, declining to follow the Superior Court's application of the discovery rule to *all* statutes of limitation and limiting it's use to indefinite references to an injury or the accrual of a cause of action. *Anthony v. Koppers*, 436 A.2d at 184. *See* note 4 *supra*.